IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

HERU SPENCER,

                Plaintiff,

v.

THE CHURCH OF PRISMATIC LIGHT,
TIFFANY FAITH WAIT,
and JERI CLARK,

                Defendants.

OPINION and ORDER

22-cv-257-wmc

---

Plaintiff Heru Spencer filed this lawsuit alleging that defendants infringed intellectual property rights that plaintiff claims in the name and tenants of his church, "The Church of Prismatic Light," and that defendants made defamatory statements about him and his church on social media. This order addresses Spencer's renewed request for subpoenas, Dkt. 176, and two motions to compel, Dkts. 195 & 196. For the reasons below, his request for subpoenas is DENIED, his motions to compel are GRANTED in part, and the court ORDERS defendants to supplement specified discovery responses by April 25, 2025. Beyond defendants' supplemental responses, discovery remains closed, and the court will not accept any further discovery-related motions from the parties while summary judgment is being briefed and remains pending. The court will reopen discovery after the court rules on the parties' summary judgment motions should any claim survive summary judgment and proceed to trial.

RELEVANT PROCEDURAL BACKGROUND

This case has been pending for nearly three years. Spencer filed this lawsuit on his own in May 2022, but found a lawyer to represent him in March 2023, two months after discovery

began.  Dkt. 44.  After defense counsel and plaintiff's counsel withdrew six months later, Dkts. 77 & 101, this case reached a fevered pitch as the now self-represented parties papered the docket with multiple motions to seal, transfer, dismiss, and for discovery.  Dkts. 78, 86, 90, 92, 117.  The parties also accused each other of harassment and coercion, and requested sanctions and protective orders.  Dkts. 81, 82, 84, 86, 89, 91, 102; *see also* Dkt. 123 at 6–8 (ruling on these motions).  The court struck the remaining case schedule, stayed discovery, and barred the parties from communicating with each other to stem the tide until it could untangle the submissions and issue a ruling.  Dkt. 111.

The court did so on September 4, 2024, reopening discovery until December 31, 2024, and setting a summary judgment deadline of November 4, 2024.  Dkt. 123 at 13.  That deadline came and went without any party filing any motions.[1]  At that point, with this case proceeding to trial without any indication that it was still being litigated by the self-represented parties, the court held a telephonic status conference on December 12, 2024, to reset the summary judgment deadline and to assist the parties with discovery by imposing a limited process facilitated by the court through which the parties could seek any discovery necessary for summary judgment from each other without contacting each other directly.  Dkt. 126.  The court oversaw this process, reviewing each discovery request the parties submitted, determining which requests a party needed to respond to, and facilitating the parties' online access to disclosed discovery materials.  Dkts. 128, 149, 155, & 174.

After the parties completed their limited discovery, the court held another status conference on February 25, 2025, to assist the parties with preparing for summary judgment

---

[1] The court issued its preliminary pretrial conference order explaining how the discovery process works as well as the procedures for summary judgment on January 13, 2023.  Dkt. 39.

2

and to address any outstanding discovery issues. Dkt. 173. The court addressed several such issues, explained the summary judgment process, and memorialized this information and its instructions in a separate order. Dkt. 174. Specifically, the court explained that plaintiff does not need to prove his case to survive summary judgment and go to trial—summary judgment will be denied if there is a genuine dispute as to a material fact. *Id.* at 3. The court also allowed the parties until March 18, 2025, to file motions to compel limited to any outstanding information necessary to either move for summary judgment or respond to a motion for summary judgment. *Id.* at 2.

Under the new schedule, summary judgment motions are due May 1, 2025.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

## ANALYSIS

Plaintiff filed three discovery-related motions after the court's February status conference with the parties. The court begins with his request for subpoenas before turning to his two motions to compel.

3

**A. Plaintiff's request for subpoenas, Dkt. 176**

Plaintiff asks the court to issue a document subpoena for ByteDance and its subsidiary TikTok and deposition subpoenas for nonparties Maili Rafael, Tyler Dionne, Ida Hamilton, and Joshua Connor. Federal Rule of Civil Procedure 45 authorizes the court where an action is pending to issue a subpoena requiring attendance at a deposition or production of documents, electronically stored information, or tangible things; however, the rule provides protections for nonparties by requiring the party responsible for issuing and serving a subpoena to take "reasonable steps" against unnecessary and burdensome discovery. In addition, the party requesting the subpoenas must be prepared to pay for service, the applicable witness and court reporter fees, and the costs associated with producing documents in response to a subpoena. *See* Fed. R. Civ. P. 30(b)(3)(A) (requiring the noticing party to pay for recording costs). These costs and fees may add up to hundreds, if not thousands, of dollars, depending on the number of depositions and the cost of responsive document production.

Plaintiff's subpoena requests are DENIED. To start, when the court reopened discovery in December 2024, it did so mainly to allow the parties to seek discovery from each other to prepare for summary judgment, not to take discovery from nonparties. At this juncture, the court is not persuaded that the information plaintiff seeks from these nonparties is both relevant and proportional to the needs of the case. As best the court can tell, the information appears largely duplicative of information the parties, and plaintiff in particular, should already have. *See* Fed. R. Civ. P. 26(b)(C)(i) (the court must limit discovery sought that is unreasonably cumulative or duplicative or can be obtained from some other more convenient source). To the extent there is some information that is not duplicative, that information

4

appears largely tangential to the merits of this case. With the supplementation ordered below, plaintiff should have all the information he needs for summary judgment.

Beyond these fundamental issues, there are procedural ones. Plaintiff does not explain why he did not seek these subpoenas when discovery was previously open and while he was represented by counsel in 2023 or after the court reopened discovery without limitation in September 2024. Plaintiff also does not explain how he will have enough time before summary judgment is due on May 1, 2025, to obtain and review the documents he seeks and to schedule and conduct four depositions without a lawyer's assistance, assuming any of the nonparties can be promptly served. On that point, plaintiff does not indicate that he is able to contact any of the nonparties he wants to depose, and without this information, it is unclear whether he could serve any of them.

Finally, the court is skeptical that plaintiff will be able to appropriately conduct a deposition without a lawyer's help, given that the court has repeatedly warned plaintiff to refrain from including irrelevant, personal information about a defendant and her family in his court filings, several of which have had to be sealed. For all of these reasons, the requests for subpoenas are DENIED.

### 1. ByteDance/TikTok

That said, the court is also unconvinced that plaintiff has taken sufficient steps to avoid undue burden and expense for the nonparties he seeks to subpoena. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (a court must limit the extent or frequency of discovery if the discovery sought can be obtained from a more convenient, less burdensome, or less expensive source). Plaintiff seeks defendant Tiffany Wait's "contracts" with ByteDance/TikTok. Dkt. 176 at 1. Specifically, he wants to show that she was receiving payments from the Creator Fund for her

5

TikTok videos about the allegedly infringing Church of Prismatic Light. The court has already explained in writing and during the February 25, 2025 hearing that financial discovery is premature at this stage because liability has not yet been established. *See* Dkts. 149 at 2 & 173.

And it is unclear why plaintiff needs Wait's actual contracts from ByteDance/TikTok. Wait did not deny receiving Creator Fund payments for her videos as plaintiff suggests she did in her initial responses to his discovery requests, *see* Dkt. 150, and plaintiff has submitted a statement Wait allegedly made during a TikTok live event indicating that she was at one point receiving Creator Fund payments, Dkt. 176 at 2. Wait may well dispute that the statement is accurate, but the court will not issue this document subpoena at this time.

### 2. Maili Rafael

As for nonparty Maili Rafael, plaintiff seeks to depose this online acquaintance of Wait regarding allegedly defamatory statements Wait may have made to Rafael about plaintiff. Specifically, plaintiff alleges Rafael stated publicly that plaintiff was dangerous based on unknown statements Wait made to Rafael. In support, plaintiff directs the court to Exhibit B, a screenshot of comments left on what appears to be a TikTok video. Plaintiff does not specify when the video was made, who is in the video, who left the comments, or what the comments concern. *See* Dkt. 176 at 5. It may be that plaintiff meant to reference a video discussed below in the context of his motion to compel, but there is no comment about plaintiff being dangerous in Exhibit B, *see id.*, so plaintiff's request to subpoena Rafael is unsupported. But more importantly, the request seeks information that is irrelevant to the claims at issue in this case. Plaintiff has no claim against Rafael—his defamation claim specific to Wait is premised on the allegation that "[o]n or around May 22, 2022 Tiffany made videos and published them on Tik

6

Tok," Dkt. 49 at 3, not that she made private defamatory statements to Rafael. Given the limited nature of the claim, the court finds the burdens a deposition would certainly impose on Rafael far outweigh whatever speculative probative value such a deposition might reveal.

### 3. Tyler Dionne

Plaintiff also seeks to depose the former treasurer of the Church of Prismatic Light, Tyler Dionne, about Wait's resignation from the allegedly infringing Church. In support, plaintiff attaches a statement from the Church about Wait's resignation following her allegedly charging personal trips to the Church's business accounts. Dkt. 176 at 6–7. Plaintiff argues that this is more evidence that Wait enriched herself through the Church, but again, it is premature to obtain such evidence. Regardless, it is unclear why plaintiff must question Dionne about this event when plaintiff can present the Church's official statement on the matter. And to the extent plaintiff wishes to impeach Wait's credibility, that is appropriate at trial, not summary judgment. *See Reinebold v. Bruce*, 18 F.4th 922, 927 (7th Cir. 2021) (at the summary judgment stage, courts may not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts").

### 4. Church board members

Plaintiff also seeks to depose Dionne, and fellow Church board members Joshua Connor and Ida Hamilton, about the Church's beginnings and what they recall about why Wait chose the allegedly infringing name so that he can shed light on Wait's "intent and motives" for using the name. Dkt. 176 at 3. But plaintiff does not indicate whether any of these nonparties were involved in the Church's founding, or explain why he could not make his point about Wait in other ways with existing evidence, such as showing that Wait continued to use the name Church of Prismatic Light even after he notified her of the alleged infringement. To be fair to

plaintiff, he may be seeking to depose Church board members because he feels stonewalled by defendants in their discovery responses on this and related topics. But rather than subject these nonparties to depositions, that court will order defendants to supplement certain discovery responses as explained below.

At bottom, discovery is a balance of considerations, not an all-out exhaustive affair. *See* Fed. R. Civ. P. 26(b)(1) (scope of discovery) & (b)(2)(C) (when a court must limit discovery). This case has been pending for three years and is only now reaching the summary judgment phase; at some point, discovery must end to allow the case to move forward in a controlled fashion. *See W. Bend Mut. Ins. Co. v. Komo Mach., Inc.*, No. 11-CV-204-WMC, 2012 WL 12996095, at *2 (W.D. Wis. May 8, 2012) ("Discovery is over. The parties should focus on trial preparation"). This sometimes means that certain information is omitted from the record when outweighed by other considerations. *See* Fed. R. Civ. P. 26(b)(2)(C). As explained above, that is the case with respect to plaintiff's subpoena requests at this stage, which the court DENIES.

**B. Plaintiff's motions to compel, Dkt. 196 & Dkt. 195**

Plaintiff also seeks to compel defendants Clark, Dkt. 195, and Wait, Dkt. 196, to supplement some of their discovery responses, which he maintains are insufficient and disingenuous. Defendants have a duty to preserve evidence relevant to this lawsuit. Fed. R. Civ. P. 37(e). And they must supplement their disclosures if they learn that their disclosures are incomplete or inaccurate "in some material respect" or "as ordered by the court." Fed. R. Civ. P. 26(e).

1. **Jeri Clark**

Defendant Clark's responses to plaintiff's discovery requests, Dkt. 129, are docketed at Dkt. 153. The court previously ordered Clark to respond to certain requests. Dkt. 149.

   a. **Interrogatory no. 1**

Plaintiff states that Clark has not adequately explained her financial interests in the Church in response to this interrogatory asking about her Church-related earnings. Dkt. 129 at 1. But the court did not require Clark to respond to this interrogatory because her personal financial gains are not relevant to the case at this point, Dkt. 149 at 2, and the court has no reason to order a response now.

   b. **Interrogatories Nos. 2, 7 and 21**

These interrogatories ask Clark for information about her media appearances, Wait's alleged statements to nonparty Rafael about plaintiff, and Clark's response to a cease-and-desist letter respectively. Dkt. 129 at 1–3. Plaintiff's only argument in his motion to compel focuses on Clark's response to Interrogatory No. 7 denying that she has ever spoken to Rafael, Dkt. 153 at 2, so that is the argument the court addresses.

Plaintiff argues that Clark's response to Interrogatory No. 7 is disingenuous because of "contradictory evidence in the record suggesting that Maili Rafaele was involved with the Church and made statements about Defendant's relationship to Plaintiff." Dkt. 196 at 7. Because Clark's answer is not responsive to plaintiff's Interrogatory No. 7, which asks Clark specifically whether Wait told her anything about any conversations Wait had with Rafael about plaintiff, the court ORDERS Clark to supplement her response to Interrogatory No. 7 docketed at Dkt. 129 at 2 by April 25, 2025.

### c. Interrogatory No. 17

In this interrogatory, plaintiff asks Clark whether she ever made any videos in which she stated that she was the creator of the Church and had filed to register a trademark for the Church before plaintiff. Dkt. 129 at 3. Clark responded confirming that she had stated she co-founded the allegedly infringing Church. Dkt. 153 at 3. Plaintiff argues that this response is incomplete because Clark does not provide more details about her role in promoting the Church on social media, but plaintiff's Interrogatory No. 17 did not ask for this information. *See* Dkt. 129 at 3. And plaintiff has ample video evidence of Clark and Wait representing their Church online. *See* Dkt. 192 (list of plaintiff's discovery materials). The court will not order Clark to supplement her response to this interrogatory further.

### d. Production Requests Nos. 3 and 4

These requests ask Clark to produce any communications from, with, or within the allegedly infringing Church and defendants, their followers, and other organizations. Dkt. 131 at 2.[2] As the court explained in its January 3, 2025, order screening plaintiff's discovery requests, these requests are too broad as written, and ordered defendants to produce "only those documents and recordings in their possession that reference [plaintiff] and" his Church of Prismatic Light that plaintiff did not already have. Dkt. 149 at 5.

Clark produced nothing in response, asserting that she had no emails, text messages, recordings, or videos referencing plaintiff or his Church of Prismatic Light. Dkt. 153 at 5. Plaintiff is understandably skeptical of this response, given Clark's involvement as a defendant

---

[2] Plaintiff submitted one list of production requests for both Wait and Clark, but Production request no. 4 asks for all communications specifically between Wait and nonparty Rafael. Dkt. 131 at 2. The court presumes now as it did in its January 3, 2025, order screening plaintiff's discovery requests, Dkt. 149, that this request pertains to Wait only.

in this lawsuit, her social media presence, role as co-founder of the allegedly infringing Church, and continued affiliation with subsequent iterations of the Church. Now that all the parties have been able to review the materials plaintiff has produced, the court ORDERS Clark to review her correspondence and social media account archives one final time and to produce to the court any responsive communications or recordings that have not already been produced or reconfirm under oath that she has no responsive materials by April 25, 2025.

### 2. Tiffany Wait

Defendant Wait's responses to plaintiff's discovery requests, Dkt. 130, are docketed at Dkt. 150. In his motion to compel, plaintiff makes a general argument that Wait's responses to all of his interrogatories are evasive and disingenuous, and argues that sanctions are appropriate. Dkt. 195 at 7–9. The court cannot evaluate these general assertions and will address only plaintiff's developed arguments tailored to specific discovery requests. *See Brockett v. Effingham Cnty., Illinois*, 116 F.4th 680, 686 (7th Cir. 2024) (arguments that are underdeveloped, cursory, and lack supporting authority are waived).

#### a. Interrogatory No. 2

Plaintiff asks Wait whether she has interviewed with PBS News, Vice News, "several other news outlets," and whether she was a guest on a late-night talk show. Dkt. 130 at 1. Wait responded that she interviewed with Vice Magazine without referencing plaintiff or his Church in the interview. Dkt. 150 at 1. Plaintiff notes that this response does not clarify whether Wait also interviewed with PBS or appeared on the talk show, but the court ordered Wait to include only her media appearances that concerned plaintiff and his Church. Dkt. 149 at 2–3. The court understands Wait's response to be that Vice Magazine was the only media interview she gave related to her Church. To avoid any confusion, the court ORDERS Wait

11

to supplement her response to this interrogatory by April 25, 2025 to confirm that the Vice Magazine interview was her only media appearance concerning the Church of Prismatic Light and whether she has ever referenced plaintiff or his church in any media appearance.

### b. Interrogatories Nos. 6 and 7

Plaintiff seeks information about Wait's private statements to Rafael that allegedly caused Rafael to state in an online video in 2022 that plaintiff is dangerous. Dkt. 130 at 2. Wait responded that she did not recall any relevant conversation with Rafael and did not make any statement to her that would have prompted the online comment. Dkt. 150 at 2. Plaintiff does not believe Wait, but the suspected conversation would have occurred nearly three years ago, and the court cannot compel someone to state something that they profess they do not remember. Moreover, as explained above, Rafael's online video and the suspected private conversation between Wait and Rafael are not part of plaintiff's defamation claim. Given Wait's lack of recollection and the tangential nature of this information, the court will not order Wait to supplement these responses.

### c. Interrogatory No. 12

Plaintiff asks Wait whether she has ever claimed that he was a threat to her and her children. Dkt. 130 at 2. Wait responded that she has not made such claims publicly beyond her contact with law enforcement and her filings in this court, and emphasizes that her fear for her and her family's safety regarding plaintiff are well-founded. Dkt. 150 at 2. Plaintiff argues that this response is incomplete because he also wants "information relating to any communications or actions taken by [Wait] that would confirm or deny these statements." Dkt. 195 at 10. The interrogatory does not ask for such specific information, and regardless, Wait admits to seeking law enforcement and court intervention out of personal safety fears.

Wait has made her concerns about plaintiff's alleged conduct clear, and the court sees no need to order Wait to supplement this response further.

### d. Interrogatory No. 15

Plaintiff asks Wait whether she ever received any messages, private or public, of support as the allegedly "true creator" of the Church. Dkt. 130 at 2. Wait admits in response that she did, that these messages acknowledged her role as the founder of the Church, and states that all Church videos featuring her were deleted when she left the Church in June 2022, so she no longer has access to them. Dkt. 150 at 3. Plaintiff asks for "further clarification" regarding the content of the messages Wait received in search of support for his claim of consumer confusion between the Churches. Dkt. 195 at 10. His interrogatory did not ask for such details, and regardless, Wait has already stated that the messages "truthfully" supported her as the Church's founder. Dkt. 150 at 3. It is unclear why plaintiff needs further information from Wait, assuming she could recall such details years later, when plaintiff has produced evidence of many online comments that he describes as proof of confusion that he presumably can use at summary judgment. *See* Dkt. 192. The court will not order Wait to supplement this response.

### e. Interrogatories Nos. 21–25

Plaintiff makes no argument regarding Wait's responses to Interrogatories Nos. 24 and 25, so the court will not address Wait's responses to them. *See* Dkt. 195 at 10.

As for Interrogatories Nos. 21–23, they concern a cease-and-desist letter plaintiff allegedly emailed Wait at some point. Plaintiff asks Wait why she continued to use the Church's name after receiving the letter, when she received it, and what her public response to the letter was. Dkt. 130 at 3. Wait responded that she could not recall the exact date she

13

received the letter but took no action or made any public statement upon receiving it because it was sent to her from a personal email account rather than from a lawyer, and she found its contents to be baseless. Dkt. 150 at 3–4. Plaintiff disputes Wait's characterization of his cease-and-desist letter as "informal," and asks the court to compel Wait to confirm when she received it and to disclose any response. Dkt. 195 at 10. Wait has already clarified that she did not respond or react in any way because she thought the letter was baseless and concluded it was without legal force because it came from a personal email rather than an attorney. But the court ORDERS Wait to supplement her response to Interrogatory No. 22, Dkt. 130 at 3, to confirm, if she can after searching her email, the date she received the cease-and-desist letter, and to do so by April 25, 2025.

    f.    Production Requests Nos. 3, 4, 6–8

These requests for production seek documentation of Wait's communications with the media as well as all communications from, with, or within the allegedly infringing Church and defendants, their followers, and other organizations. Dkt. 131 at 2–3. As explained above, the court limited the defendants to producing only the documentation and recordings that referenced plaintiff and his Church that plaintiff did not already have. Dkt. 149 at 5. Like Clark, Wait did not produce any documents or recordings in response, attesting that she did not have any responsive communications, recordings, videos, or social media posts. Dkt. 150 at 5–6. Plaintiff is skeptical of Wait's responses as well, given her role as a defendant in this lawsuit and co-founder of the allegedly infringing Church, and her social media presence. As with Clark, the Court ORDERS Wait to review her correspondence and social media account archives a final time in light of the discovery materials plaintiff has now produced and to

produce to the court any responsive communications or recordings that have not already been produced or reconfirm under oath that she has no such materials by April 25, 2025.

Defendants are ORDERED to submit supplemental discovery responses to the court in compliance with this order, along with a numbered list of any new materials submitted that the court will make available to the parties. To be clear, **discovery remains closed**, and the court will not address any more discovery-related motions until discovery is reopened to allow for trial preparation on any claims that survive summary judgment. The parties have now had ample opportunity to litigate their discovery disputes, and the court has spent significant time and resources assisting the parties with the discovery process. They must now turn their full focus to the summary judgment process, having only until May 1, 2025 to prepare. If a party believes that another party is relying on inadmissible evidence in support or in opposition to summary judgment, that reliance may be disputed through the proposed-findings-of-fact process. *See Preliminary Pretrial Packet* attached to Dkt. 39 at 3–9. If plaintiff remains dissatisfied with Clark's and Wait's supplemental responses, he may make his case on summary judgment for an adverse inference or other sanction for failure to comply with a discovery order. *See* Fed. R. Civ. P. 37(b) (failure to comply with a court order).

ORDER

IT IS ORDERED that:

1. Plaintiff's motion for subpoenas, Dkt. 176, is DENIED.

2. Plaintiff's motions to compel, Dkts. 195 & 196, are GRANTED in part and DENIED in part as follows:

    a. No later than **April 25, 2025**, defendant Jeri Clark must submit to the court supplemental responses to plaintiff's **Interrogatory No. 7 at Dkt. 129 and Production Requests Nos. 3 and 4 as modified by the court at Dkt. 149 at 4–5**. The court will make available to the parties any documents Clark produces to the court in response, and Clark must include a list of any documents produced.

    b. No later than **April 25, 2025**, defendant Tiffany Wait must submit to the court supplemental responses to plaintiff's **Interrogatories Nos. 2 and 22 at Dkt. 130 and Production Requests Nos. 3, 4, & 6–8 as modified by the court at Dkt. 149 at 4–5**. The court will make available to the parties any documents Wait produces to the court in response, and Wait must include a list of any documents produced.

3. Discovery remains closed. The court will not address any further discovery-related motions from the parties until discovery is reopened upon court order should any claims survive summary judgment and proceed to trial.

Entered April 14, 2025.

BY THE COURT:

/s/

_____
ANITA MARIE BOOR
Magistrate Judge